## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| ADVANCE STORES COMPANY,<br>INCORPORATED, a Virginia corporation,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN ROOFING SERVICES, INC.,<br>a Delaware Corporation,<br>14025 Riveredge Drive<br>Suite 600<br>Tampa, FL 33637<br><br>Registered Agent:<br>National Registered Agents Inc<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060<br><br>Defendant. | Case No.  7:19cv397 |

## COMPLAINT

COMES NOW Advance Stores Company, Incorporated ("Advance"), by counsel, and files this Complaint against the Defendant, North American Roofing Services, Inc. ("N.A. Roofing"). In support of its Complaint, Advance states as follows:

## NATURE OF THE ACTION

1.      Advance seeks damages from N.A. Roofing as a result of N.A. Roofing's breaches of a Facilities Master Services Agreement ("Agreement") arising out of the installation of a complete roofing system at a store owned and operated by Advance.

2.      Advance owns and operates a retail store located at 110 Logan Square, Russellville, Kentucky (the "Russellville Store").

25661/2/8871982v1

3.      N.A. Roofing contracted with Advance to provide and install a new roofing system over an existing exposed metal roof at the Russellville Store.

4.      N.A. Roofing performed the work, but did so improperly, breaching the Agreement with Advance.

5.      N.A. Roofing failed to comply with local, state, and federal codes related to the design and installation of a new roofing system, breaching the Agreement with Advance.

6.      N.A. Roofing failed to properly perform the design and installation of the new roofing system, which resulted in the failure and partial collapse of the Russellville Store's roof and underlying roof structure and significant water intrusion and resulting damage, breaching the Agreement with Advance. N.A. Roofing also failed to perform in a good and workmanlike manner, and in accordance with the applicable standard of care, also breaches of the Agreement with Advance.

7.      As a result of N.A. Roofing's breaches of the Agreement with Advance, N.A. Roofing has caused Advance to incur significant damages totaling at least $1,136,289.76.

## PARTIES

8.      Advance is a corporation organized and operating under the laws of the Commonwealth of Virginia. Advance's principal place of business is located at 5008 Airport Road, Roanoke, Virginia 24012.

9.      Upon information and belief, N.A. Roofing is a corporation organized and operating under the laws of the State of Delaware. N.A. Roofing's principal place of business is located at 14025 Riveredge Drive, Suite 600, Tampa, Florida 33637.

25661/2/8871982v1

## JURISDICTION AND VENUE

10.     This Court has diversity subject matter jurisdiction over this matter because Advance and N.A. Roofing are corporations that are incorporated and maintain principal places of business in different states, and Advance seeks damages that exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

11.     This Court has personal jurisdiction over N.A. Roofing because N.A. Roofing entered into a Facilities Master Services Agreement ("Agreement") with Advance. In the Agreement, N.A. Roofing consented to jurisdiction in this Court for resolution of any disputes between these parties. Section 14.1 of the Agreement specifies that Advance and N.A. Roofing "irrevocably consent to the jurisdiction of the federal and state courts situated in the City of Roanoke, Virginia and agree that any lawsuit arising out of or related to this agreement shall be brought only in such courts." Further, N.A. Roofing entered into the Agreement and related work order with Advance in Virginia. A copy of the Agreement is incorporated by reference and is attached as **Exhibit 1**.

12.     Venue is also proper in this judicial district and in this division under Section 14.1 of the Agreement, which states that the parties consent to "the jurisdiction of the federal and state courts situated in the City of Roanoke, Virginia and agree that any lawsuit arising out of or related to this agreement shall be brought only in such courts."

## FACTS

N.A. Roofing Holds Itself Out As A Leader In The Roofing Industry.

13.     According to N.A. Roofing's website, it was founded 40 years ago, in 1979.[1]

---

[1] https://naroofing.com/about/our-story/ (last accessed May 28, 2019).

25661/2/8871982v1

14.     N.A. Roofing advertises that it is "the most trusted & respected commercial roofing company in the U.S."[2]

15.     N.A. Roofing also emphasizes that it is a "Commercial Roofing Contractor[] with an Engineering Focus."[3]

The Facilities Master Services Agreement.

16.     Advance and N.A. Roofing entered into the Agreement in October, 2014.

17.     Pursuant to the Agreement, N.A. Roofing had a standing agreement to perform "roofing services" work for, and as needed by, Advance. **Exhibit 1**, p. 1.

18.     The initial term of the Agreement was 12 months. **Exhibit 1**, § 1. Thereafter, the Agreement was extended on a month-to-month basis. *Id.* The Agreement remained in full force and was in force at all times relevant to the claims at issue in this Complaint.

19.     Pursuant to the Agreement, N.A. Roofing was to perform work on individual projects for Advance as requested in subsequent Work Orders. **Exhibit 1**, § 2, Exhibit A. Each statement of work was expressly subject to the terms and provisions of the Agreement. *Id.*

20.     As part of the Agreement, N.A. Roofing, for itself and its representatives, agreed to "full and total responsibility for compliance with all federal, state and local laws, ordinances, regulations or permits applicable to the Services" that N.A. Roofing undertook for Advance. **Exhibit 1**, § 9.1.

21.     Furthermore, N.A. Roofing agreed that "[N.A. Roofing] and its Representatives shall perform the Services in accordance with, and shall not violate any applicable laws or regulations of any applicable jurisdiction[.]" **Exhibit 1**, § 10.1(b).

22.     Pursuant to the Agreement, N.A. Roofing agreed to:

---

[2] https://naroofing.com/ (last accessed May 28, 2019).
[3] https://naroofing.com/about/our-story/ (last accessed May 28, 2019).

25661/2/8871982v1

> indemnify and hold Advance [ . . . ] harmless from any loss, claim, damage, liability or expense, of any nature or kind (including attorneys' fees) directly or indirectly arising out of, related to or resulting from this Agreement [ . . . ] including, without limitation any of the following: (i) any breach or default of any of the terms, conditions, warranties, representations or obligations of Contractor contained herein; (ii) any damage or injury of any kind, whether to person or property (including death), resulting from or arising out of the performance or non-performance of the Services by Contractor or its Representatives, its agents or employees[.]

**Exhibit 1**, § 9.2.

23.     Under the Agreement, N.A. Roofing and any representative were required to "employ skilled, trained and, if required, licensed personnel for the performance of the Services" and to "perform the Services in a good, professional and workmanlike manner, and to standards and requirements in the industry for the Services required or requested[.]" **Exhibit 1**, § 10.1(a).

24.     Advance and N.A. Roofing knowingly, voluntarily and intentionally waived any right to a trial by jury with respect to litigation based on the Agreement or arising out of, under or in connection with the Agreement. **Exhibit 1**, § 14.3.

25.     Under the Agreement, if Advance brings an action at law or in equity to enforce or interpret the Agreement, it "shall be entitled to recover its reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which Advance may be entitled." **Exhibit 1**, § 15.1.

The New Roof Work at the Russellville Store.

26.     In early 2015, Advance determined that it needed to have the roof replaced at the Russellville Store.

27.     Advance sought a proposal for this roofing work from N.A. Roofing.

28.     On April 29, 2015, N.A. Roofing, using Advance's online system, submitted Proposal PRP000223897-4 for installing a new roof over the existing roof at the Russellville

5

Store (the "Proposal"). A copy of the Proposal is incorporated by reference and attached as **Exhibit 2**.

29.     The roof of the Russellville Store was surrounded by a parapet on all four sides. The roof sloped down towards the rear of the building, and drained into a gutter that ran the length of the building and had four downspouts approximately 3.75 inches by 3.75 inches each.

30.     N.A Roofing designed and agreed to install a new roof on top of this existing roof.

31.     As part of its design for the roof work, N.A. Roofing proposed to "[p]rovide and install approximately 88 linear feet of plywood over existing gutter. Provide and install (4) new roof drains into existing downspouts."

32.     N.A. Roofing's design and plan was to cover up the existing gutter and then to cut four new drain holes into the new roof directly over the four existing 3.75-inches by 3.75-inches downspouts to drain the entire roof into those downspouts.

33.     Unfortunately, N.A. Roofing ultimately made these new drain holes too small to adequately drain the water off the roof. Unbeknownst to Advance, the drain holes that N.A. Roofing designed and installed through the new roof material had a diameter of, at most, 2 inches.

34.     Instead of the previous rain water drainage system where the entire roof drained into a gutter that ran the length of the building and then into four 3.75-inches by 3.75-inches downspouts, the new roof system included a redesigned drainage system that directed the rain water into four small drain holes, each with a diameter of 2 inches, at the most.

6

35.     Advance did not instruct N.A. Roofing to drastically reduce the amount of drainage on the roof, nor was it aware of the lack of drainage that N.A. Roofing designed and installed.

36.     Additionally, as explained below, the building codes that applied to the Russellville Store also required the installation of a secondary or backup drain system, which N.A. Roofing did not recommend or install.

37.     N.A. Roofing offered to perform the roof work for $46,832.75. Advance accepted the Proposal and N.A. Roofing performed the design and installation of the re-roofing work. N.A. Roofing installed the roof during the summer of 2015, and Advance paid N.A. Roofing for its work.

38.     The re-roofing work performed under the Proposal was performed under the overall Agreement between Advance and N.A. Roofing.

Violations of Building Codes.

39.     Building codes provide guidelines that constrain the way roofs and drainage systems may be installed.

40.     The 2013 Kentucky Building Code applies to "the construction, *alteration*, relocation, enlargement, replacement, *repair* [ . . . ] of every *building* or *structure*[.]" 2013 Kentucky Building Code § 101.2 (4 Ed., April 2017) (emphasis added).

41.     Chapter 15 of the 2013 Kentucky Building Code prescribes certain requirements for the alteration of roof drainage systems. 2013 Kentucky Building Code Ch. 15 (4 Ed., April 2017).

42.     Specifically, "[d]esign and installation of roof drainage systems shall comply with the Kentucky Plumbing Code and the requirements of this section. The primary and secondary

7

roof drainage systems shall comply with the requirements of Sections 1503.4.1 through 1503.4.2." *Id.* at § 1503.4.

43.     A "scupper" is an opening or outlet in the side of a roof edge or parapet wall to allow water to drain off a flat roof, similar to a weep hole.

44.     Chapter 15 of the Kentucky Building Code further requires that "[s]econdary (emergency) roof drains or scuppers shall be provided where the roof perimeter construction extends above the roof in such a manner that water will be entrapped if the primary drains allow buildup for any reason." *Id.* at § 1503.4.2.1. On the Russellville Store, the parapet that surrounds all four sides of the roof is a "roof perimeter construction" that extends "above the roof in such a manner that water will be entrapped" and will build up if the primary drains are blocked or are not able to adequately drain the roof.

45.     The Kentucky State Plumbing Code, part of the Kentucky Administrative Regulations ("KAR"), requires that "primary and secondary roof drains shall comply with the requirements established in this subsection." 815 KAR 20:130, § 8(3).

46.     The Kentucky State Plumbing Code also requires that "[s]econdary (emergency) roof drains or scuppers shall be provided where the roof perimeter construction allows ponding if the primary roof drains become blocked." *Id.* at § 8(3)(c).

47.     N.A. Roofing, despite its redesign of the rain water drainage system for the Russellville Store roof, did not install any secondary (emergency) roof drains or scuppers.

48.     N.A. Roofing did not comply with the requirements of either the 2013 Kentucky Building Code or the Kentucky State Plumbing Code.

49.     The Kentucky Plumbing Code also requires a permit for new plumbing installations. 815 KAR 20:050, § 2(1).

50.     "Plumbing" is defined as:

> the art of installing in buildings the pipes for distributing the water supply, the fixtures for using water and drainage pipes for removing waste water and sewage, together with fittings, appurtenances, and appliances of various kinds, all within or adjacent to the building. It shall not include the installation of on-site sewage disposal systems, except for the piping, fixtures, or other appurtenances needed within the building. *It shall include*:
> [ . . . ]
> (d) Storm sewers and rain water piping located within a building to a point two (2) feet outside of the building[.]

KY. REV. STAT. § 318.010(4) (emphasis added).

51.     N.A. Roofing did not procure a plumbing permit, even though it redesigned the rain water drainage system for the Russellville Store roof.

52.     The Kentucky State Plumbing Code also includes requirements for the sizing of the rain water leaders, which dictate the minimum requirements for the drain openings penetrating the roof membrane. 815 KAR 20:050, § 22.

53.     For a roof the size of the one at the Russellville Store with four drains, the Kentucky State Plumbing Code requires each of the four drains to have a diameter of at least 3.5 inches.

54.     But the four roof drains that N.A. Roofing installed each had a diameter of, at most, 2 inches. This equates to drastically inadequate drainage for the roof.

55.     Since the area of a circle is *pi* multiplied by the radius of the circle squared [$A = \pi r^2$], the area of a circular drain with a diameter of 3.5 inches [and a radius of 1.75 inches] (as required by Kentucky) would be approximately 3.14 x 1.75$^2$ = 9.62 square inches.

56.     But the area of a circular drain with a diameter of 2 inches [and a radius of 1 inch] (what N.A. Roofing installed) is approximately 3.14 x 1$^2$ = 3.14 square inches. This means each drain was less than a third of the required size.

9

57.     N.A. Roofing's design and installation of drains that were less than a third the size they were required to be is a violation of the applicable codes and regulations.

58.     Furthermore, N.A. Roofing's failure to install secondary, emergency overflow drains or scuppers is also a violation of the applicable codes and regulations.

Roof Collapse.

59.     The drainage designed and installed by N.A. Roofing was not sufficient to drain and keep water off the roof of the Russellville Store.

60.     With such inadequate drainage, it is not surprising that water began to pool on the roof of the Russellville Store.

61.     Eventually, during a rainstorm, the water built up to such a point that around 7:40 a.m on May 11, 2016, the roof of the Russellville Store collapsed under the weight of over a foot of water.

62.     The roof collapse severely damaged many structural components of the Russellville Store, and the water intrusion into the Russellville Store following the roof collapse damaged a large quantity of products and inventory.

63.     The collapsed roof caused the Russellville Store to be closed starting on May 11, 2016.

64.     Following the roof collapse event, Advance immediately undertook steps to secure and inspect the premises.

65.     Additionally, as a direct result of the roof collapse, Advance was forced to repair and reconstruct the Russellville Store, which required drawings, permitting, demolition, restorative and new construction, and replacement of furniture, fixtures, and equipment.

66.     In an effort to mitigate the catastrophic loss of closing its only retail store in this rural area of Kentucky, Advance obtained a short-term lease of a nearby commercial retail space and opened a temporary store (the "Temporary Store").

67.     Advance had to hire extra labor, order fixtures and new materials, and procure equipment to set up and open the Temporary Store for business.

68.     On August 11, 2016, Advance opened the Temporary Store for business. The Temporary Store was open until October 18, 2016.

69.     The Russellville Store did not reopen for business until October 19, 2016.

Damages to Advance.

70.     As a direct result of N.A. Roofing's failures to perform the roofing work correctly and pursuant to the Agreement, Advance has incurred significant financial damages.

71.     The roof collapse caused a great deal of damage to the Russellville Store and to the inventory in the Russellville Store.

72.     Advance had to abandon stock and inventory damaged and ruined by the water intrusion ("Inventory Loss Costs"). Advance has incurred $188,564.18 in Inventory Loss Costs.

73.     Advance also incurred costs associated with the remediation of water and other debris, removal of fixtures, partial demolishing of existing construction, designs for the Russellville Store and Temporary Store, submitting plans for permit, and constructing aspects of the Russellville Store and Temporary Store, and to open and close the Temporary Store and re-open the Russellville Store ("Remediation and Construction Costs"). Advance has incurred $598,255.63 in Remediation and Construction Costs.

25661/2/8871982v1

74.     Advance incurred costs associated with a short-term lease of the commercial building that housed the Temporary Store ("Temporary Lease Costs"). Advance has incurred $60,000.00 in Temporary Lease Costs.

75.     Advance lost revenue during the period in which the Russellville Store remained closed ("Lost Profits"). Advance has incurred at least an estimated $243,469.95 in Lost Profits.

76.     Advance has also incurred and is continuing to incur attorney and legal expenses to respond to and address N.A. Roofing's mishandling of the Work ("Legal Costs"). Advance has incurred, as of May 28, 2019, in excess of $46,000.00 in Legal Costs.

77.     In total, Advance has incurred damages in the amount of at least $1,136,289.76, which amount shall be fully determined at trial.

78.     These damages are all due to N.A. Roofing's failure to perform under the Agreement in a good and workmanlike manner, its failure to comply with industry standards in the design and installation of the roof, and its violation of the applicable building and plumbing codes.

## COUNT I: BREACH OF CONTRACT

79.     Advance incorporates all prior paragraphs herein.

80.     Advance and N.A. Roofing entered into a Master Services Agreement in October, 2014.

81.     N.A. Roofing provided Advance with its Proposal for the roof work on April 29, 2015, using Advance's online system.

82.     Advance accepted the Proposal, and N.A. Roofing performed under it and under the Agreement.

83.     The Agreement and Proposal constitute a binding written contract between

12

Advance and N.A. Roofing.

84.     N.A. Roofing undertook the roof work pursuant to the Proposal and the Agreement. N.A. Roofing both designed and installed the roof. N.A. Roofing was fully paid for its work.

85.     N.A. Roofing breached its contract with Advance by negligently designing and negligently installing the roof at the Russellville Store with inadequate drainage, and by negligently failing to perform its work under the Agreement in a good and workmanlike manner.

86.     N.A. Roofing also breached its contract with Advance by failing to comply with the applicable building codes in its design and installation of the roof system at the Russellville Store.

87.     As a direct and proximate result of N.A. Roofing's breaches of the Agreement, Advance has been damaged to date in the amount of at least $1,136,289.76. Damages in the form of attorney's fees and other court costs continue to accrue.

WHEREFORE, Advance seeks at least $1,090,289.76 in damages, in addition to attorneys' fees and costs of at least $46,000.00, with the final and total amount to be proven at trial, against N.A. Roofing, with all such further and general relief as the Court deems appropriate.

## COUNT II: INDEMNIFICATION

88.     Advance incorporates all prior paragraphs herein.

89.     The Agreement is a binding and legally enforceable contract between Advance and N.A. Roofing.

90.     Pursuant to the Agreement, N.A. Roofing agreed to:

indemnify and hold Advance [ . . . ] harmless from any loss, claim, damage, liability or expense, of any nature or kind (including

13

attorneys' fees) directly or indirectly arising out of, related to or resulting from this Agreement [ . . . ] including, without limitation any of the following: (i) any breach or default of any of the terms, conditions, warranties, representations or obligations of Contractor contained herein; (ii) any damage or injury of any kind, whether to person or property (including death), resulting from or arising out of the performance or non-performance of the Services by Contractor or its Representatives, its agents or employees[.]

*See* Ex. 1, § 9.2.

91.     N.A. Roofing is contractually obligated to indemnify Advance for any damages that result from a breach of the Agreement that are the responsibility of N.A. Roofing.

92.     As set forth above, Advance has incurred at least $1,136,289.76 in damages as a result of N.A. Roofing's breaches. Damages in the form of attorney's fees and other court costs continue to accrue.

WHEREFORE, Advance seeks at least $1,090,289.76 in damages, in addition to attorneys' fees and costs of at least $46,000.00, with the final and total amount to be proven at trial, against N.A. Roofing, with all such further and general relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Advance prays for judgment in its favor and an award of at least $1,090,289.76 against N.A. Roofing, plus attorneys' fees and costs of at least $46,000.00, as well as all other relief the Court deems appropriate.

Pursuant to the Agreement, the Plaintiff DEMANDS A BENCH TRIAL.


ADVANCE STORES COMPANY, INCORPORATED


/s/ K. Brett Marston
K. Brett Marston (VSB No. 35900)

14

Kirk M. Sosebee (VSB No. 88013)
GENTRY LOCKE
10 Franklin Road, SE, Suite 900
Roanoke, Virginia 24011
(540) 983-9300
Fax: (540) 983-9400
marston@gentrylocke.com
sosebee@gentrylocke.com

*Counsel for Advance Stores Company, Incorporated*

15

25661/2/8871982v1